**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAYLOR CAMPOS, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-1897 |
| | § | |
| K&N HOLDINGS LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |

## ORDER

Before the Court is Defendant K&N Holdings LLC's ("Defendant") Motion to Dismiss.
(Doc. No. 9). Plaintiff Taylor Campos ("Plaintiff") responded in opposition. (Doc. No. 11).
Defendant replied. (Doc. No. 13). For the following reasons, Defendant's Motion to Dismiss is
**DENIED**.

### I.    BACKGROUND

Plaintiff filed this employment discrimination lawsuit against Defendant, her former
employer, for pregnancy discrimination. Defendant is a luxury appliance business selling kitchen
appliances and custom cabinetry. (*Id.*). According to her Complaint, Plaintiff began her
employment at Defendant's Houston showroom in May 2023 working as a scheduler, which was
an hourly role. (Doc. No. 1 ¶ 7).

In July 2023, Plaintiff learned of her pregnancy and immediately informed Defendant. She
further claims that in September 2023, she sent her supervisor, Shawn Edge, a text message sharing
her due date of April 20, 2024. (*Id.* ¶ 8).

A month later, in August 2023, Plaintiff became a salaried employee when she accepted a
new position as a Return Merchandise Authorization ("RMA") Coordinator. (*Id.* ¶ 9). Plaintiff

alleges that Defendant moved her into this role after the existing RMA Coordinator, Amador Rodriguez, was struggling with some of the duties. (*Id.*). At that point, Defendant effectively split the RMA Coordinator role into two positions, employing both Rodriguez and Plaintiff. (*Id.* ¶ 10). Plaintiff was permitted a partial remote working arrangement since her duties focused on communication with distributers, and Edge told Plaintiff he "did not want her in the warehouse now that she was pregnant." (*Id.*).

On Friday December 8, 2023, Edge asked to speak with Plaintiff seemingly "out of the blue." (*Id.* ¶ 15). In that discussion, Edge explained that Defendant's CEO, Blair Drenner, no longer wanted Plaintiff working from home, so she would be required to be in the office full time moving forward. (*Id.* ¶ 16). Next, Edge presented Plaintiff with a Performance Improvement Plan ("PIP") she would be placed on. (*Id.* ¶ 17). Before this meeting, Plaintiff had received no prior indication that her work was not up to Defendant's standards. (*Id.*). Furthermore, the terms of her PIP did not match the customary terms of Defendant's typical PIPs. Plaintiff's PIP had no quantifiable metrics to track her progress and its length was only to last 13 days, whereas Defendant's PIPs ordinarily lasted 30 days or more. (*Id.* ¶ 18). At the meeting, Edge explained the PIP arose from a discussion with Drenner about Plaintiff's role in the company, and Edge suggested that Plaintiff was no longer a good fit for her position due to her pregnancy. (*Id.* ¶ 19). At this time, Rodriguez was not placed on a PIP. (*Id.* ¶ 17).

That next Monday, Plaintiff again talked to Edge about the PIP, expressing her disagreement with it, and asking him for specific examples of her deficient work performance. (*Id.* ¶ 20). Edge again alluded to her pregnancy, suggesting she was not the right person for the job. He then told Plaintiff he would speak with Drenner about the PIP; however, Plaintiff could not resume work in the meantime. (*Id.* ¶ 22). Plaintiff refused to sign the PIP until she heard the outcome of

Edge's conversation with Drenner. After that, Edge told Plaintiff to turn in her company laptop and work phone before she left the office. (*Id.* ¶ 22). When Plaintiff later called Edge for an update, he told her that she had quit. (*Id.* ¶ 23). She insisted that she did not quit her position, and Edge suggested she come back to the office if she wanted to talk more about the situation. (*Id.* ¶ 20). When she got back to the office, Plaintiff met with Drenner, who maintained that she had quit, presented her with a letter that falsely claimed she terminated her own employment because she refused to sign the PIP, and refused to speak with her further for "legal reasons." (*Id.* ¶ 24).

Plaintiff claims her PIP "was nothing more than a thinly disguised and discriminatory plot by Defendant to terminate her because of her pregnancy." (*Id.* ¶ 25). Accordingly, Plaintiff brought this lawsuit against Defendant on April 25, 2025, asserting one cause of action for pregnancy discrimination in violation of Title VII. (*Id.* at 5). Defendant filed its Motion to Dismiss under Rule 12(b)(6) (Doc. No. 9) which is now ripe for ruling.

## II.    LEGAL STANDARD

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

3

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## III.   ANALYSIS

Under Title VII, an employer may not "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act specifies that "because of sex," as used in Title VII, includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k). The Pregnancy Discrimination Act also requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* A pregnancy discrimination claim is analyzed under the same standards used for other Title VII discrimination claims. *See Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 812-13 (5th Cir. 1996); *Williams v. Sterling Healthcare Servs., Inc.*, 193 F. App'x 328, 32–30 (5th Cir. 2006).

At the Rule 12(b)(6) stage, the Court's analysis of Plaintiff's Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)—and not the evidentiary standard set forth

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Although Plaintiff need not submit evidence to establish a prima face case of discrimination under *McDonnell Douglas* at the pleading stage, she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). When, like here, the plaintiff's Title VII claim depends on circumstantial evidence, the plaintiff "will ultimately have to show that [s]he can satisfy the *McDonnell Douglas* framework." *Olivarez*, 997 F.3d at 600 (quoting *Cicalese*, 924 F.3d at 767). In such cases, the Fifth Circuit informs that "it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Id.*

"Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination." *Id.* "Specifically, a plaintiff must allege facts sufficient to support a finding 'that [s]he was treated less favorably than others *outside of [her] protected class.*'" *Id.* (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)).

Defendant argues that Plaintiff has failed to state a viable Title VII claim for three reasons: (1) Plaintiff has failed to sufficiently plead that Defendant took any adverse employment action against her; (2) Plaintiff's allegations demonstrate that she and her chosen comparator are not similarly situated since they have distinct job responsibilities; and (3) Plaintiff's allegations

demonstrate she was treated equally, not less favorably, to her allegedly similarly situated coworker. The Court will address each argument in turn.

### i.    Adverse Employment Action

First, Defendant argues that Plaintiff fails to plead factual allegations sufficient to establish that it terminated her employment. (Doc. No. 9 at 9). Defendant claims that Plaintiff's allegations demonstrate that she resigned from her employment and so her adverse employment action should be analyzed as a constructive discharge, not a termination. The Court does not agree.

As the Court reads the Complaint, Plaintiff pleads that she was terminated, but that Defendant falsely characterized her termination as a resignation. Plaintiff alleges that she was presented with a seemingly unfair, unreasonable, and unexpected PIP. (Doc. No. 1 ¶¶ 17–20). When Plaintiff asked Edge for specific examples of where her work was deficient, he suggested that perhaps she was not the right person for the job and alluded to her pregnancy. (*Id.* ¶¶ 21–22). Edge then told her he would speak to his manager, but until then, Plaintiff could not return to work. (*Id.* ¶ 22). Plaintiff did not sign the PIP as she did not agree with it and was waiting on Edge's discussion with Brennan. (*Id.*) She was immediately told to turn in her company laptop and work phone before she left. (*Id.*).

When Plaintiff followed up with her supervisor later that day, he told her that she had quit, to which Plaintiff disagreed, insisting she had not quit. (*Id.* ¶ 23). Edge suggested she return to the office if she wanted to talk about it more, which she did. (*Id.* ¶ 23–24). On her return, she spoke to her supervisor's manager who maintained that she had quit, presented her with a letter falsely claiming Plaintiff had terminated her own employment when she refused to sign the PIP, and refused to discuss the matter with her further due to "legal reasons." (*Id.* ¶ 24).

6

Employment termination is an adverse employment action. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) ("To adequately plead an adverse employment action, . . . plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment'") (quoting 42 U.S.C. § 2000e-2(a)(1)). Plaintiff repeatedly contests Defendant's characterization of her termination as a resignation. Accordingly, the Court finds Plaintiff has sufficiently alleged an adverse employment action.

### ii. "Similarly Situated" Comparators

Next, Defendant argues that Plaintiff's factual allegations contradict any allegation that Amador Rodriguez (Plaintiff's chosen comparator) is "similarly situated." (Doc. No. 9 at 6).

As the Court previously stated, the Fifth Circuit has instructed that the Court should not "inappropriately heighten the pleading standard" by subjecting a plaintiff's allegations to the *McDonnell Douglas* analysis at the 12(b)(6) stage. *Cicalese*, 924 F.3d at 767. In this case, Plaintiff has pleaded the two ultimate elements: (1) that she was effectively terminated from her employment (despite it being characterized as a resignation) (Doc. No. 1 ¶¶ 20–24); and (2) that her non-pregnant comparator was not issued a PIP and allowed to continue his employment. (*Id.* ¶¶ 17, 34). Moreover, at this stage, the Court must accept those allegations as true.

Defendant argues that Plaintiff's allegations demonstrate that her work was "fundamentally different from Rodriguez" and so she cannot identify any comparator who was similarly situated. (Doc. No. 13 at 2). While this may ultimately prove to be true, the Court at this stage cannot so rule as a matter of law. Plaintiff pleads that she and Rodriguez were both RMA coordinators (Doc. No. 1 ¶ 10), Plaintiff was pregnant (*Id.* ¶ 8), and Rodriguez was not (*Id.* ¶ 34), Plaintiff received a PIP (*Id.* ¶¶ 17–18), and Rodriguez did not (*Id.* ¶¶ 17, 36), and Plaintiff was ultimately terminated

after her refusal to sign the PIP (*Id.* ¶¶ 22–25). The factual inquiry as to whether Rodriguez and Plaintiff are similarly situated in a way sufficient under *McDonnell Douglas* is an inquiry more appropriate for summary judgment. Here, Plaintiff has pleaded sufficient facts to support her claim for disparate treatment under Title VII. *See Olivarez*, 997 F.3d at 600 (finding failure to state a claim of sex discrimination when plaintiff's complaint contained "no allegation" of a similarly situated employee); *Burton v. Univ. of Hou.*, No. 4:24-CV-576, 2025 WL 92960 (S.D. Tex. Jan. 14, 2025) (Hanen, J.) (finding pleading of "non-Black comparators" was sufficient to state a claim for race discrimination under Title VII despite the fact that comparators might have different job titles). To dismiss Plaintiff's claims at this stage, without discovery and holding her to the prima facia *McDonnell Douglas* elements, would be to err. Defendant, however, remains free to raise the same arguments again at a later stage.

### iii.   Less Favorable Treatment

Finally, Defendant argues that Plaintiff has not sufficiently pleaded that she was treated less favorably than other similarly situated employees outside the protected group. For the same reasons as above, an examination of this prong of the prima facie case at this stage is premature, as Plaintiff is only required to plead the two essential elements, which, as explained above, she has. Moreover, she has also pleaded that her comparator was not placed on a PIP when she was, and, ultimately, was allowed to continue employment with Defendant. *See* (Doc. No. 1 ¶¶ 17). These pleaded facts make it plausible that she was treated less favorably than her comparator who is not in the protected class.

8

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 9) is **DENIED**.


It is so ordered.

Signed on this the _31st_ day of March, 2026.

Andrew S. Hanen
United States District Judge